# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-01-00273-CR
===============


**Pamela T. Hayes, Appellant**

**v.**

**The State of Texas, Appellee**


**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT**
**NO. A-99-0601-S, HONORABLE BEN WOODWARD, JUDGE PRESIDING**


Appellant Pamela T. Hayes appeals her conviction for forgery. *See* Tex. Pen. Code Ann. § 32.21(b) (West 1994). Appellant asks this Court to reverse her conviction and render a judgment of acquittal on the grounds that (1) a fatal variance exists because, although the indictment alleges that appellant forged a check, the evidence at trial indicated that the instrument technically was not a check; and therefore (2) the evidence was legally insufficient to support the jury's verdict. We will affirm the trial court's judgment.


## BACKGROUND

On appeal, appellant emphasizes that the indictment specifically charges her with forging a *check*. The pertinent portion of the indictment reads as follows:

> PAMELA T. HAYES, Defendant, on or about the 3rd day of June, A.D. 1999, and before the presentment of this indictment, in said County and State, did then and there, with intent to defraud and harm another, intentionally and knowingly possess with intent to pass a forged writing, knowing such writing to be forged, and such

writing had been made so that it purported to be the act of Robert Smith, who did not authorize the act, and said writing was a check . . . .

The indictment includes a photocopy of the forged instrument, which recites that the maker is Robert Smith and "Pay the amount of $322.55, payable to Pamela T. Hayes; June 3rd, 1999; account number 4121741554917646."

At trial, the State presented evidence concerning the nature of the forged instrument. In opening argument, the State acknowledged that the instrument appellant was charged with passing was not "a normal check . . . it wasn't a check; but it was passed as a check . . . ." The alleged maker, Robert M. Smith, testified that the instrument passed by appellant was not an ordinary check. Based on his experience from previous consulting work, Smith testified that the document in question was of the type sent out by credit card companies to allow one to transfer a balance from one credit card to another. Smith also pointed out several common features of checks that were missing from the instrument presented by appellant. Ann Hoelscher, another witness for the State and a cashier with Texas Bank, testified that the numbering on the bottom of the instrument was invalid and would not have gone through the banking system. Hoelscher also testified that the wording of the forged instrument was not that of a normal and legitimate check.

## DISCUSSION

### *Fatal Variance*

A person who forges a writing with intent to defraud or harm another commits an offense of forgery. *See* Tex. Pen. Code Ann. §32.21(b) (West 1994). Section 32.21(a)(1) defines "forge" as follows:

2

(A)  to alter, make, complete, execute, or authenticate any writing so that it purports

   (i)   to be the act of another who did not authorize that act;

   (ii)  to have been executed at a time or place or in a numbered sequence other than was in fact the case; or

   (iii) to be a copy of an original when no such original existed;

(B)  to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A); or

(C)  to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B).

Tex. Pen. Code Ann. §32.21(a)(1) (West 1994).  The indictment charged appellant with forging a writing with the intent to defraud or harm another.[1]  Appellant does not contend that the State failed to prove the required elements of the offense.  The evidence at trial clearly showed that appellant had possessed with the intent to pass a forged "writing" that had been made so that it purported to be the act of Robert Smith, who did not authorize the act.  Appellant contends, however, that the State also had to prove that the writing was a check.  The issue of whether the forged instrument was an authentic check is important, appellant urges, because the indictment specifically refers to the forged writing as a "check."  Appellant contends that by specifically describing the forged writing as a check in the indictment, the State assumed the burden of proving its case as alleged.  According to appellant, the State's failure to do so resulted in a variance between the indictment and the proof presented at trial.

---

[1] The pertinent portion of the indictment reads that appellant did "with intent to defraud and harm another, intentionally and knowingly possess with intent to pass a forged writing . . . ."

A variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. "In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). Assuming without deciding that appellant is correct in asserting that (1) the proof presented at trial demonstrates that the instrument signed and passed by her technically was not a check, and (2) that fact constitutes a variance, we must determine whether this variance is material.[2] A variance is material when it is prejudicial to a defendant's substantial rights. *See id.* at 248. In determining whether a defendant's substantial rights have been prejudiced, courts generally make two inquiries:

> [W]hether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime.

*Id.* (citing *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)).[3]

---

[2] A determination of materiality is required in the context of a variance-insufficiency claim primarily because "in a variance situation, unlike a standard insufficiency claim, the State, by all accounts, has proven that the defendant committed a crime. The only question is whether it has proven the details as it alleged in the indictment." *Gollihar v. State*, 46 S.W.3d 243, 248 n.7 (Tex. Crim. App. 2001).

[3] Past decisions by the Texas Court of Criminal Appeals have offered slightly different formulations of the materiality requirement. *See, e.g.*, *Rojas v. State*, 986 S.W.2d 241, 246 (Tex. Crim. App. 1998) (noting that a "variance between the charging instrument and the proof at trial is material only if it operated to the defendant's surprise or prejudiced his rights"); *Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995) ("The object of the doctrine of variance between allegations of an indictment is to avoid surprise, and for such variance to be material it must be such as to mislead the party to his prejudice."); *Plessinger v. State*, 536 S.W.2d 380 (Tex. Crim. App. 1976) (holding variance in style of case pleaded for enhancement not material where defendant not surprised or misled to his prejudice).

In *Dietz v. State*, 62 S.W.3d 335 (Tex. App.—Austin 2001, pet. filed), this Court analyzed the materiality requirement of variance pursuant to the test set out in *Gollihar*: whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the indictment would subject the defendant to the risk of being prosecuted later for the same crime. In *Dietz,* the indictment stated that the defendant, a bail enforcement agent attempting to apprehend a fugitive at an apartment complex, intended to induce a police officer and three occupants of the apartment to submit to his authority by pretending to be a police officer. *Id.* at 340. However, the evidence at trial showed that the defendant represented himself as a police officer to only the police officer and one occupant. *Id.* This Court held that there was no variance between the indictment and the evidence because the State was not required to prove that the defendant misrepresented himself to anyone he intended to induce to submit to his claimed authority. *Id.* at 340. We further concluded that if a variance existed, it was immaterial, reasoning that there was "nothing in the record to indicate that the precise number of people to whom Dietz impersonated himself as a public servant was crucial to his ability to conduct his defense to the charged offense." *Id.* at 341. Also, we found that the defendant faced no further prosecution "because the indictment on its face constitutes evidence that he was charged with impersonating a public servant with respect to all four individuals." *Id.*

In light of the materiality test set out in *Gollihar* and its application by this Court in *Dietz*, we conclude that even if a variance exists in this case, it is not material.[4] That is, the indictment

---

[4] The type of writing being forged is relevant only to the degree of punishment imposed. The forgery statute provides that an "offense under this section is a state jail felony if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement,

5

informed appellant of the charge against her sufficiently to allow her to prepare an adequate defense at trial, and the indictment would not subject her to the risk of a later prosecution for the same crime. *See Gollihar*, 46 S.W.3d at 258. In determining whether the indictment gave appellant sufficient notice to prepare a defense, we reiterate that the State was not required to plead in the indictment that the forged writing was a check or any other specific instrument; an indictment must include only the essential elements of the offense as presented in the statute. *Thomas v. State*, 621 S.W.2d 158, 161 (Tex. Crim. App. 1981). The indictment tracks the language of the forgery statute, and an "indictment or information normally provides sufficient notice if it tracks the language of the statute." *Olurebi v. State*, 870 S.W.2d 58, 62 (Tex. Crim. App. 1994). The indictment in question correctly charged appellant for possession with the intent to pass a forged "writing," a word that is defined in the forgery statute.[5] If a word is defined in the statute and the word used in an indictment tracks the statutory language, the word need not be further alleged or defined in the indictment. *Thomas*, 621 S.W.2d at 161; *State v. Mays*, 967 S.W.2d 404, 409 (Tex. Crim. App. 1998).

---

credit card, check or similar sight order for payment of money, contract, release, or other commercial instrument." Tex. Pen. Code Ann. § 32.21(d) (West 1994). Following trial, appellant was sentenced to confinement in state jail for a period of two years, with this confinement being suspended and appellant placed on probation for five years.

   [5] "[W]riting" includes: printing or any other method of recording information; money, coins, tokens, stamps, seals, credit cards, badges, and trademarks; and symbols of value, right, privilege, or identification. Tex. Pen. Code Ann. §32.21(a)(2) (West 1994).

6

Furthermore, appellant does not attempt to provide any rationale as to why the description of the forged writing as a "check" adversely affected her ability to present an adequate defense. Rather, appellant relies on *Taylor v. State*, 626 S.W.2d 543 (Tex. App.—Texarkana 1981, pet. ref'd), to illustrate the application of the fatal variance doctrine in a forgery case. At the time of that decision, forgery could be committed in any one of three ways: by altering or making, by passing, and by possessing with intent to pass. *Id.* at 545. There, the indictment specifically charged the defendant with altering an instrument, but the evidence at trial only established that he had passed the instrument. *Id.* The Sixth Court of Appeals stated that the "State could have charged him with forgery by any or all of the three methods. It chose to select, indict, and try Taylor for forgery by altering a writing. When the prosecution selects the mode of charging a crime it must prove the case as alleged." *Id.*

We do not find *Taylor* to be controlling. In *Taylor*, the defendant clearly was misled by the indictment so that his defense was prepared solely against the allegation of altering the instrument in question. Here, the needless description of the writing as a "check" did not impair appellant's ability to prepare her defense. Appellant admitted to the forgery of a writing that at least *purported to be* a check. Appellant does not contend that she would have prepared her defense differently if she had been charged with forgery of "a check *or similar sight order for payment of money." See* Tex. Pen. Code Ann. § 32.21(d) (West 1994). Neither does the description of the forged writing as a check subject appellant to the risk of being prosecuted later for the same crime. Appellant was charged with forging only the instrument that is photocopied in the indictment; it is

7

the same forged instrument exhibited and proved at trial. We hold the variance was not material, and overrule appellant's issue accordingly.

### *Insufficiency of the Evidence*

The Court of Criminal Appeals has previously considered and rejected the notion that variance claims are somehow distinct from insufficiency of the evidence claims. *See Gollihar*, 46 S.W.3d at 247. Appellant's challenge to the legal sufficiency of the evidence rests solely on the variance, and because appellant's pleaded variance is immaterial, our inquiry is ended.

## CONCLUSION

We overrule appellant's issue. Accordingly, the judgment of the trial court is affirmed.

_____

—

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:   February 28, 2002

Do Not Publish